# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LORILYN AGUINALDO,**
**a/k/a LORILYN GOMEZ,**

        **Petitioner,**

  **v.**                                                      **Case No. 10-C-150**

**DAVID G. BETH,**

        **Respondent.**

## DECISION AND ORDER

The Petitioner, Lorilyn Aguinaldo ("Aguinaldo"), also known as Lorilyn Gomez, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Aguinaldo is currently being detained by the Respondent, David G. Beth ("Beth"), the Sheriff of Kenosha Country, Wisconsin, at the Kenosha County Jail on behalf of the Field Office Director for the United States Immigration and Customs Enforcement ("ICE")[1] and the DHS. Pursuant to the Court's order, Beth filed a return to the petition. Thereafter, with leave of the Court, Aguinaldo filed a reply. The petition is addressed herein.

---

[1] In 2003, functions of the former Immigration and Naturalization Service ("INS") were transferred to the newly formed Department of Homeland Security ("DHS") and divided into three separate agencies, including United States Citizenship and Immigration Services ("USCIS"); the Attorney General retained the adjudicative and discretionary functions exercised through the immigration judges and the Board of Immigration Appeals. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified as amended at 6 U.S.C. § 291(a)).

**Background**

Aguinaldo, a Philippine national and citizen, entered the United States as a visitor on June 12, 1986, at age 14. (First Am. Pet. ("Pet.") ¶ 6.) She is now 37 years of age. (*Id.*) Aguinaldo married Francisco Gomez ("Gomez"), a United States citizen on March 24, 2000, and is the mother of three minor children. (*Id.*)

On January 13, 1992, the INS commenced immigration proceedings against Aguinaldo by issuing an order to show cause. (*Id.*) On March 3, 1992, the immigration court entered an order of voluntary departure against Aguinaldo allowing her to leave the United States by March 2, 1993. (*See* Return, Ex. 1.) The immigration judge's order states that if Aguinaldo "fails to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice proceedings" and that Aguinaldo is then subject to deportation from the United States to the Philippines. (*Id.*) Aguinaldo did not depart the United States as ordered. (*Id.*)

Aguinaldo alleges that she did not receive the order to show cause and that the March 3, 1992, order was entered against her *in absentia*. (*Id.*) The government counters that Aguinaldo was not removed *in absentia*, in that she received an order of voluntary departure which states that a "[c]opy of this decision has been served on respondent." (Return, Gov't Ex. 1.)

On about August 6, 1999, legacy INS issued a warrant for removal/deportation of Aguinaldo based on her failure to voluntarily depart. (*Id.*, Gov't Ex. 3). Meanwhile, on September 17, 2007, the United States Citizenship and Immigration Services ("USCIS")

2

approved a petition for alien relative (I-130) that Gomez filed on Aguinaldo's behalf. On December 6, 2009, Aguinaldo filed an application for adjustment of status to legal permanent resident, which is pending with the USCIS. During December 2009, Aguinaldo also filed a motion to reopen and rescind the *in absentia* Order with the immigration court in Arlington, Virginia. (*Id*., Gov't Ex. 2 (Mot. without Attachs).) That motion also remains pending.

On about May 19, 2009, Aguinaldo was arrested by the Chicago Fugitive Operations Unit and placed in custody. On May 21, 2009, the Chicago ICE office began its efforts to obtain necessary travel documents from Aguinaldo. (*Id*., Gov't Ex. 4.) Aguinaldo was brought to ICE's office to complete a travel document application for the Philippines and she refused to complete the document. (*See id.*) Aguinaldo was also presented with the travel document application on June 24, July 21, September 23, October 23, and November 23, 2009. (*See id.*) Each time, she declined to complete the document. (*See id.*)

On November 28, 2009, ICE issued a "Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g)" ("Notice") (*Id*., Gov't Ex. 5), indicating that Aguinaldo had been provided with three opportunities to comply with her obligation to assist in obtaining a travel document and that pursuant to Section 241(a)(1)(C) of the Immigration and Nationality Act ("INA"), she is required to make timely and good faith efforts to obtain travel or other documents necessary for her removal from the United States. (*Id.*) The Notice also states that Section 241(a)(1)(C) allows for an extension of the removal period if Aguinaldo fails to make these efforts and that because of Aguinaldo's failure to comply with her obligation the removal period is extended. (*Id.*)

3

**Analysis**

Aguinaldo's petition claims that ICE misconstrues the effect of the immigration court's order of voluntary departure and is wrongfully detaining her. She alleges that the 1992 order of voluntary departure no longer provides a basis to detain her because of her pending claim for an adjustment of her status to legal permanent resident.

The Government counters that Aguinaldo is properly in custody pending her removal and should not be released at this time. The Government asserts that Aguinaldo's current detention and removal are directly related to her failure to abide by the March 2, 1992, immigration court's order and that her disregard for the immigration laws, as well as her "flouting the benefit" of voluntary departure, should not result in her release.

The authority to detain aliens after the issuance of a final removal order is set forth in section 241(a) of the INA, 8 U.S.C. § 1231(a). The provision affords a ninety-day period for the Attorney General to accomplish an alien's removal from the United States following an entry of a final order of deportation or removal. *See* 8 U.S.C. § 1231(a)(1)(A)-(B). During that period, Congress has mandated the detention of the alien who is the subject of the removal order. 8 U.S.C. § 1231(a)(2).

From this Court's perspective, Aguinaldo is no longer subject to an order of voluntary departure. Because Aguinaldo overstayed her voluntary departure and failed to depart, the order immediately converted into a final order of removal. As such, Aguinaldo is subject to a valid, final order of removal and is in her removal period. Aguinaldo remains in custody pending removal due to her failure to comply with her obligation to assist in obtaining

the necessary travel documents. On five occasions, Aguinaldo was afforded the opportunity to complete the travel application and, on each occasion, Aguinaldo refused to complete the form. Completion of the travel document application would allow ICE to start the process of obtaining a travel document from the Philippines. Aguinaldo has failed to make timely and good faith efforts to obtain travel or other documents necessary to effectuate her removal from the United States and, as a result of that non-compliance, § 1231(a)(1)(C) allows for an extension of the removal period. Aguinaldo's failure to cooperate in obtaining the necessary travel documents has caused her to remain in custody.

Although Aguinaldo filed for an adjustment of her status on December 6, 2009, and that application remains pending with USCIS, that agency does not have jurisdiction to consider her application for adjustment of status. Under the applicable regulations, USCIS has jurisdiction to adjudicate an application for adjustment of status filed by an alien, *unless* the immigration judge has jurisdiction to adjudicate the application under 8 C.F.R. § 1245.2(a)(1). As applicable to this case, 8 C.F.R. § 1245.2(a) provides that, if an alien has been placed in deportation or removal proceedings, the immigration judge presiding over the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status filed by an alien.

Because Aguinaldo is in her removal period, only the immigration court may assume jurisdiction over her adjustment application; and, the disposition of Aguinaldo's motion to reopen and her application for adjustment of status rest with that court. Aguinaldo's pending claim for adjustment of her status to that of a legal permanent resident has no impact

on the final order of removal and her custody pending her removal. She is in custody pursuant to the final order of removal and remains in custody because she has not completed the necessary travel application.

For the first time in her reply brief, Aguinaldo explains her reasoning regarding the purported expiration of the removal order. She contends that the order only required her to leave the United State within five years of its entry and that it expired on March 3, 1998. Aguinaldo maintains that the inadmissibility provisions of §212(a), codified at 8 U.S.C. § 1182(a), indicate five-year and ten-year expiration periods depending upon the circumstances of deportation and that the statute's list of "bars" to obtaining entry to the United States, including immigration violations, does not specify any other expiration date. Aguinaldo also asserts that § 1182 does not state that an alien must leave the United States in order for the time to begin to run on the five-year or ten-year bar.

Relying on the foregoing, Aguinaldo maintains that the inadmissibility provisions imply that there is an expiration on removal orders, because there is no language in the statute addressing time-frames in relation to a deportation or removal order. She states the Government's unstated premise is that orders of removal or deportation do not expire, which directly conflicts with the statutory language of the inadmissibility provisions. She maintains that with the filing of her request for an adjustment of her status, she is in compliance with the law, no longer subject to removal or detention, and that the adjustment statute confers adjustment of status upon her at this time.

Aguinaldo's argument that her removal status has expired ignores the introductory language of 8 U.S.C. § 1182. Section 1182(a) states that "[e]xcept as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." The general rule provided by section 1182(a) is that persons who are inadmissible are ineligible for admission to the country without limitation. The subsections of the statute that refer to five-year and ten-year periods of time are exceptions to the general rule. The statutory language does not support Aguinaldo's contention that her removal status has expired. Therefore, Aguinaldo has not established that she is entitled to relief under 28 U.S.C. § 2241, and her petition is **DENIED**.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Aguinaldo's petition for a writ of habeas corpus is **DENIED**;

This action is **DISMISSED**; and,

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 20th day of July, 2010.

**BY THE COURT**

*s/ Rudolph T. Randa*
**Hon. Rudolph T. Randa**
**U.S. District Judge**